# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

DANIEL MECCA,

    Plaintiff,

v.                                         Case No: 8:12-cv-2561-T-30TBM

FLORIDA HEALTH SERVICES
CENTER, INC.,

    Defendant.

## ORDER

THIS CAUSE comes before the Court upon Defendant's Motion for Summary Judgment (Dkt. #40) and Plaintiff's Memorandum in Opposition (Dkt. #50). It is the Court's conclusion that the Motion should be granted.

### *Background*

Plaintiff Daniel Mecca brings this action against Florida Health Services Center, Inc. d/b/a Tampa General Hospital ("TGH") for employment discrimination and retaliation under the Americans with Disabilities Act ("ADA") 42 U.S.C. §12101, *et. seq.*, and the Florida Civil Rights Act ("FCRA"), Fla. Stat. §760.01, *et. seq.* He also brings claims for interference and retaliation regarding his rights under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, *et. seq.*

Mecca was employed with TGH as a Peripherally Inserted Central Catheter ("PICC") nurse from 2004 through 2010. A PICC nurse inserts a PICC line into patients,

which is an intravenous catheter that is typically inserted through a large vein generally in a patient's upper arm and then threaded into the patient until its tip rests in the body directly next to the patient's heart. Mecca performed these procedures as the main duty for his job position. This is a specialized job that requires adherence to proper procedures and strict sterile techniques to avoid a high risk of infection.

In his Amended Complaint, Mecca alleges that he has a disability regarding panic attacks and anxiety and that he sought accommodation for his disability in the form of leave. Mecca does not identify any other accommodation that he requested. Mecca's symptoms include nervousness, anxiety, incontinence, and sleeplessness, among other things. Mecca took leave under FMLA on numerous occasions during his employment, both intermittently, and for consecutive weekly periods. TGH also changed his schedule at his request.

Mecca made numerous complaints about his manager Sandra Mehner's management style and enforcement of policies beginning in 2006. Mecca documented his disagreements and criticisms and had several disputes with Mehner regarding the same issues. In response, Mehner issued him a written warning in February 2008. Mecca admits that none of these disputes, including the written warning, were related to his disability. The written warning was later revoked at a meeting with human resources personnel. Mecca continued to have issues while working with Mehner and other employees after this meeting.

On May 8, 2010, Mecca returned to work after several consecutive weeks on FMLA leave which began on April 19, 2010. He had a medical note from his doctor releasing him

to work three days a week for eight to twelve hours a day. However, on his first day back at work Mecca did not respond to any requests for "consults" which are requests to assess a patient and insert a PICC line.  Mecca left for the day prior to the end of his shift.

Mehner told Mecca not to return to work until he heard from the hospital. The following day, Mecca sent emails to Mehner's manager criticizing Mehner's work. After numerous communications with the human resources department indicating that he would be subject to discipline, including termination, for failing to respond to consults, Mecca submitted his resignation. TGH gave Mecca two weeks' pay and extended his medical benefits through the end of June. Following the resignation, Mecca applied for Social Security Disability benefits claiming he was unable to work as of May 8, 2010. The Social Security Benefits Administration determined that Mecca was unable to work due to his disability and granted benefits.

## I. Legal Standard

Motions for summary judgment should be granted only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247 (1986).  The existence of some factual disputes between the litigants will not defeat an otherwise properly supported summary judgment motion; "the requirement is that there be no genuine issue of material fact." *Id.* at 248.  The substantive law of the claimed causes of action will determine which facts are material. *Id*.

All evidence must be examined in the light most favorable to the non-movant and all inferences must be drawn in his or her favor. *Id.* at 255. Once a party properly makes a summary judgment motion by demonstrating the absence of a genuine issue of material fact, whether or not accompanied by affidavits, the nonmoving party must go beyond the pleadings through the use of affidavits, depositions, answers to interrogatories and admissions on file, and designate specific facts showing that there is a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

A dispute about a material fact is "genuine," when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. There can be "no genuine issue as to any material fact," when there is a complete failure of proof concerning an essential element of the nonmoving party's case. *Celotex Corp.*, 477 U.S. at 323. The failure of proof necessarily renders all other facts immaterial. *Id*. The moving party is "entitled to a judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof. *Id*.

II.   **Defendant's Motion for Summary Judgment**

TGH moves for summary judgment on the following bases: (1) Mecca cannot prove that he was qualified to perform the essential functions of the job, including placing PICC lines and having regular attendance; (2) Mecca cannot provide a causal connection between his separation of employment and his request for leave nor can he prove that TGH's reasons for separation were pretextual; (3) Mecca is judicially estopped from claiming that he can perform the essential functions of his job when he testified under oath to the contrary at his

4

Social Security Disability proceedings; (4) Mecca cannot overcome TGH's claim that it would have terminated him based on after-acquired evidence that he falsified his employment application; and (5) Mecca failed to exhaust his administrative remedies as to his retaliation claim.

### III. Mecca's Discrimination Claims under the ADA and FCRA

In Count I and III of his Amended Complaint, Mecca alleges discrimination based on his disability under the ADA and FCRA. To establish a prima facie case of employment discrimination under the ADA, a plaintiff must demonstrate "that (1) he has a disability, (2) he is a qualified individual, which is to say, able to perform the essential functions of the employment position that he holds or seeks with or without reasonable accommodation, and (3) the defendant unlawfully discriminated against him because of the disability." *D'Angelo v. ConAgra Foods, Inc.*, 422 F.3d 1220, 1226 (11th Cir. 2005) (internal quotations omitted). Under the ADA, an employer's failure to provide a reasonable accommodation can be a form of discrimination. *See Holly v. Clairson Indus., L.L.C.*, 492 F.3d 1247, 1262 (11th Cir. 2007). Disability discrimination claims raised under the FCRA are analyzed under the same framework as the ADA. *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263-64 (11th Cir. 2007).

TGH does not dispute that Mecca is a person with a disability as defined in the ADA. However, it argues that: (1) he is not a qualified individual with a disability because he is unable to perform the essential functions of a PICC nurse; (2) his requested accommodation of intermittent and indefinite leave is not a reasonable accommodation;

and (3) Mecca has not produced any evidence to show the reason for his termination is pretextual.

### a. Qualified Individual with a Disability

An individual is qualified if "with or without reasonable accommodation, [he] can perform the essential functions of the employment position...." 42 U.S.C. § 12111(8). Therefore, if Mecca cannot show that he can perform the essential functions of a PICC nurse with a reasonable accommodation, then he cannot sustain a claim for discrimination under the ADA or FCRA.

The essential functions are defined as the fundamental job duties of a position. *D'Angelo*, 422 F. 3d at 1230. "Determining whether a particular job duty is an essential function involves a factual inquiry to be conducted on a case-by-case basis." *Webb v. Donley*, 347 Fed. Appx. 443, 445 (11th Cir. 2009) (*quoting Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1258 (11th Cir. 2001)). *See also* 29 C.F.R. § 1630.2(n)(3). The ADA regulations identify three bases on which a job function may be deemed essential: "(1) the reason the position exists is to perform the function; (2) there are a limited number of employees available among whom the performance of the job function can be distributed; and (3) the function is highly specialized so that the incumbent in the position was hired for his or her expertise or ability to perform the particular function." 29 C.F.R. § 1630.2(n)(2). "In certain situations, daily attendance may be an essential function of a position, but it is not always an essential function." *Webb*, 347 Fed. Appx. at 445.

TGH argues that regular attendance is an essential job function of a PICC nurse. TGH relies on *Samper v. Providence St. Vincent Med. Ctr.*, 675 F.3d 1233, 1237 (9th Cir.

6

2012) for the proposition that regular attendance is an essential job function in jobs that require on-site presence to perform the functions of the position. In *Samper*, the plaintiff was a nurse in the hospital's neo-natal intensive care unit (NICU). The NICU nurses provided a high level of intensive care for premature babies, and required specialized training. Therefore, if a NICU nurse was unexpectedly absent from work, it was difficult to replace that nurse on short notice, and the absence could jeopardize patient care.

The plaintiff in that case suffered from fibromyalgia which caused flare-ups of physical pain requiring her to take leave unexpectedly. The hospital's leave policy allowed five unexplained absences, in addition to scheduled leave, FMLA leave, and other forms of leave. The hospital worked with her on several occasions to accommodate her requests for a flexible schedule, but ultimately could not continue to accommodate her numerous unscheduled absences. The Ninth Circuit held that given the specialization in training, and the high risk of jeopardizing patient care, the plaintiff's regular attendance was an essential function of her job. The court stated that "[t]he common-sense notion that on-site regular attendance is an essential job function could hardly be more illustrative than in the context of a neo-natal nurse. This at-risk patient population cries out for constant vigilance, team coordination and continuity." *Id*. at 1238.

The Court finds the *Samper* case persuasive. The role of a PICC nurse at TGH is very similar to that of a NICU nurse as described in *Samper*. The Court concludes that a PICC nurse's regular attendance at work is an essential job function. Therefore, Mecca was not qualified for the position as a matter of law unless he can show a reasonable accommodation that would allow him to attend work regularly.

A reasonable accommodation means "[m]odifications or adjustments to the work environment, or to the manner or circumstances under which the position held or desired is customarily performed, that enable a qualified individual with a disability to perform the essential functions of that position." 29 C.F.R. § 1630.2(o)(1)(ii).

It is Mecca's burden to identify a reasonable accommodation that will allow him to perform the essential duties. *Terrell v. USAir,* 132 F.3d 621, 624 (11th Cir. 1998). It is also Mecca's burden of persuasion to show that the accommodation is reasonable. *Id.* Mecca only identified one accommodation: "that he be allowed to go home or be absent from work if he was experiencing episodic flare-ups of depression and anxiety/panic making it difficult to function." Dkt. # 17 ¶39.

An employee's request for part-time or modified work schedules may be a reasonable accommodation. 42 U.S.C. § 12111(9)(B). However, an employer is not required to reallocate job duties to change the functions of a job. *Earl v. Mervyns, Inc.,* 207 F.3d 1361, 1367 (11th Cir. 2000). Therefore, a request to arrive at work at any time, without reprimand, is not a reasonable accommodation because it would change the essential functions of a job that requires punctual attendance. *Id.*

Further, indefinite and indeterminable leave is not a reasonable accommodation. An employer does not have to wait indefinitely for an employee's medical condition to be corrected, especially when it is uncertain whether the condition will improve. *See Wood v. Green*, 323 F.3d 1309, 1314 (11th Cir. 2003). In *Wood*, the Court held that an accommodation for indefinite leave is unreasonable if it does not allow someone to perform his or her job duties in the present or in the immediate future. *Id*. at 1314. Mecca has not

8

provided any estimation as to when or if his condition will improve. He has been receiving treatment since 1995, and has requested leave multiple times throughout his employment with TGH. Mecca's treating physician stated in a letter to the Social Security Administration that he was not "optimistic" about Mecca's recovery.

Mecca received leave whenever he requested it, and could not identify one instance when he was not granted leave upon request. Despite having taken leave on numerous occasions, the leave had not improved Mecca's ability to have regular attendance, nor was there any indication that it would do so at any point in the near future. Therefore leave was not a reasonable accommodation. *See Wood*, 323 F.3d at 1314. Mecca has not met his burden to show that his requested accommodation was reasonable or that it would allow him to perform the essential functions of a PICC nurse. Therefore, Mecca cannot establish that he is a qualified person with a disability.

### b. Mecca's Social Security Disability Claim

TGH further argues that Mecca is estopped from claiming that he was a qualified person with a disability because he testified at his Social Security Disability hearing that he was completely unable to work and perform essential duties of his position as of May 8, 2010. However, "pursuit, and receipt, of SSDI benefits does not automatically estop the recipient from pursuing an ADA claim. Nor does the law erect a strong presumption against the recipient's success under the ADA."  *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 797-98 (1999).  Nonetheless, "an ADA plaintiff cannot simply ignore [his] SSDI contention that []he was too disabled to work." *Id*.

To survive TGH's motion for summary judgment, Mecca must explain why his testimony to the Social Security Administration that he was completely unable to work as a PICC nurse is consistent with his ADA claim that he could perform the essential functions of the job with a reasonable accommodation. *Id*. Mecca must provide an "explanation sufficient to warrant a reasonable juror to conclude that, assuming the truth of, or the Plaintiff's good faith belief in, the earlier statement, the Plaintiff could nonetheless perform the essential functions of [the] job, with or without reasonable accommodation." *Id*. at 807. Mecca fails to provide a sufficient explanation and therefore cannot survive summary judgment since he is unable to identify a reasonable accommodation that would allow him to perform the essential functions of a PICC nurse.

### c. Unlawful Discrimination

Even assuming Mecca could show that he is a qualified person with a disability, he still has the burden to show that TGH discriminated against him based on his disability. A plaintiff bringing an ADA discrimination claim must satisfy the same evidentiary burdens demanded in a Title VII discrimination case. *Hilburn v. Murata Electronics N. Am., Inc.*, 181 F.3d 1220, 1226 (11th Cir. 1999).

Where a plaintiff offers circumstantial evidence to prove a discrimination claim, courts use the analytical framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1331 (11th Cir. 1998). Therefore, once the employer offers legitimate, nondiscriminatory reasons for the employment action to rebut the presumption, the burden shifts back to the plaintiff to discredit the proffered reasons by

showing that they are pretextual. *Bass v. Lockheed Martin Corp.,* 287 F. Appx 808-810-11 (11th Cir. 2008).

Mecca claims he was terminated, although the record shows that he resigned. However, TGH does not dispute that it terminated Mecca for purposes of its summary judgment motion. The Court need not resolve this issue since the evidence establishes that Mecca suffered an adverse employment action. Mecca's manager told him on May 8, 2010, not to return to work until further notice, removed him from the schedule indefinitely, and the HR department informed him that he was subject to discipline for failing to respond to requests for consults.

TGH has met its burden to produce a legitimate non-discriminatory reason for its adverse employment action. It claims that Mecca engaged in repeated violations of TGH's code of conduct including refusing to perform his job duties, return pages promptly, or see patients. Further, he was uncooperative, rude and insubordinate. At least one co-worker documented that she felt threatened by him. Therefore, the burden would shift to Mecca to show that these reasons are pretextual.

To prove pretext, a plaintiff has to show that his "employer's explanation is unworthy of credence." *Jackson v. Ala. State Tenure Comm'n*, 405 F.3d 1276, 1289 (11th Cir. 2005) (citing *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)). This requires showing "both that the reason was false, and that discrimination was the real reason" for the adverse action. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 512 n. 4, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). A plaintiff may show pretext by pointing to "weaknesses, implausibilities, inconsistencies, incoherencies,

or contradictions" in the employer's proffered reason. *Brooks v. Cnty. Comm'n of Jefferson Cnty.*, 446 F.3d 1160, 1163 (11th Cir. 2006). A plaintiff may also produce other evidence "which permits the jury to reasonably disbelieve the employer's proffered reason." *Steger v. Gen. Elec. Co.*, 318 F.3d 1066, 1079 (11th Cir. 2003). "Any believable evidence which demonstrates a genuine issue of material fact regarding the truth of the employer's explanation may sustain the employee's burden of proof." *Id.*

Mecca has not presented evidence sufficient to show that TGH's proffered reason for the adverse employment action is pretextual. He argues that all of his evaluations and written comments about his performance have been positive. However, Mehner testified that they did not include any disciplinary actions on his evaluations in order to provide Mecca a "clean slate." Further, he admits that he did not respond to any consults on May 8, 2010, and did not offer an explanation for his behavior until the next day. He also admits to having serious and ongoing disagreements with Mehner regarding her adherence to hospital policies and practices and that all of the disagreements with Mehner were completely unrelated to his disability. Mecca does not point to sufficient circumstantial evidence that would allow a trier of fact to determine that the adverse employment action was based on his disability. Therefore, TGH is entitled to summary judgment as to these claims.

### IV.  Mecca's Retaliation Claims under the ADA and FCRA

In Counts II and IV of his complaint, Mecca asserts that TGH retaliated against him for engaging in his protected activity of requesting accommodations under the ADA and FCRA. Courts assess ADA and FCRA retaliation claims under the same framework as

retaliation claims arising under Title VII. *Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1287 (11th Cir. 1997); *Harper v. Blockbuster Entm't Corp.*, 139 F.3d 1385, 1389 (11th Cir. 1998) ("[D]ecisions construing Title VII guide the analysis of claims under the Florida Civil Rights Act.")

To establish a prima facie case of retaliation, a plaintiff must demonstrate that (1) he engaged in a statutorily protected expression; (2) he suffered an adverse employment action; and (3) there was a causal link between the adverse action and his protected expression. *Luna v. Walgreen Co.*, 347 Fed.Appx. 469, 472 (11th Cir. 2009) (citing *Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1260 (2001)). Once the plaintiff establishes a prima facie case of retaliation, the burden shifts to the employer to articulate a non-retaliatory reason for its treatment of the employee. *Pennington v. City of Huntsville*, 261 F.3d 1262, 1266 (11th Cir. 2001). If the employer presents a legitimate explanation for its actions, the burden then returns to the plaintiff to show that the explanation is pretextual. *Id*.

Defendant argues that Mecca failed to exhaust his administrative remedies prior to filing a claim for retaliation in this action because he did not check the box for retaliation or state any facts to support retaliation in his EEOC charge or on the intake questionnaire. To bring suit for retaliation under the FCRA or ADA, Mecca first must exhaust his administrative remedies by filing a timely discrimination charge with the appropriate commission. *Gregory v. Ga. Dep't of Human Res.*, 355 F.3d 1277, 1280 (11th Cir. 2004); Fla. Stat. § 760.11(1).

In *Gregory*, the Eleventh Circuit held that the district court properly allowed a retaliation claim to proceed, even where the complainant failed to allege retaliation in her

initial complaint to the EEOC, because "[t]he facts alleged in her EEOC charge [of race and gender discrimination] could have reasonably been extended to encompass a claim for retaliation." *Id*. at 1280. "The proper inquiry ... is whether [the complaint to the district court] was like or related to, or grew out of, the allegations contained in [the] EEOC charge." *Id*. Courts are "extremely reluctant to allow procedural technicalities to bar claims brought under [Title VII]." *Id*. at 1280. The Eleventh Circuit has noted that "the scope of an EEOC complaint should not be strictly interpreted." *Id*. (internal quotations omitted). Mecca alleged disability discrimination in his EEOC charge form, which could reasonably be extended to encompass the retaliation claim since the claims are based on the same set of facts.

Nonetheless, TGH is entitled to summary judgment on the retaliation claims. Even if Mecca could demonstrate a causal connection, he fails to provide sufficient evidence to rebut the presumption in favor of TGH that its actions were legitimate and non-retaliatory. Mecca has not produced sufficient evidence to show that TGH's proffered reasons for the adverse action are pretextual. He is not permitted to state in a conclusory fashion that the employment action was pretextual without offering substantial evidence to support his claim. *See Chapman v. AI Transp*., 229 F.3d 1012, 1030 (11th Cir. 2000) (en banc) ("A plaintiff is not allowed to recast an employer's proffered nondiscriminatory reasons or substitute his business judgment for that of the employer. Provided that the proffered reason is one that might motivate a reasonable employer, an employee must meet that reason head on and rebut it, and the employee cannot succeed by simply quarreling with

the wisdom of that reason.") Accordingly, Defendant is entitled to summary judgment on this claim.

## V. Interference and Retaliation claims under the FMLA

The FMLA creates two types of claims to preserve and enforce the availability of the substantive rights granted by it: interference claims, in which an employee asserts that his employer denied or otherwise interfered with his substantive rights under the Act, *see* 29 U.S.C. § 2615(a)(1), and retaliation claims, in which an employee asserts that his employer discriminated against him because he engaged in activity protected by the Act. *See* 29 U.S.C. § 2615(a)(1) & (2); 29 C.F.R. § 825.220(c). *See also Strickland v. Water Works & Sewer Bd. of City of Birmingham,* 239 F.3d 1199, 1206 (11th Cir. 2001). While the FMLA does not clearly define these two claims with the labels "interference" and "retaliation," those are the labels courts have used in describing an employee's claims under the Act. *Id.* at 1206 n. 9 (citing *O'Connor v. PCA Family Health Plan, Inc.*, 200 F.3d 1349, 1352 (11th Cir. 2000)).

Mecca claims that TGH interfered with his exercise of FMLA leave, but has not produced sufficient evidence to support this claim. He admits that when he requested an accommodation in the form of leave or reduced hours, TGH granted it.[1] When asked to identify at least one instance when he was denied leave upon request, he could not do so.

---

[1] Plaintiff was asked more than once during his deposition whether his requests for leave were always granted and each time he responded "yes." Pl. Dep. 52:11-14 and 118:16-18. However, in his errata, Plaintiff stated "[t]here were times Sandra told me to work through my panic attacks so saying yes to this question is incorrect." Plaintiff does not provide any reason why he did not provide this answer during his deposition.

15

Therefore, Mecca has not met his burden on his claim that TGH interfered with his rights under the FMLA.

To succeed on an FMLA retaliation claim, an employee must demonstrate that his employer intentionally discriminated against him in the form of an adverse employment action for having exercised an FMLA right. *Strickland*, 239 F.3d at 1207. The same burden shifting framework established in *McDonnell Douglass* applies to retaliation claims under the FMLA. *See id.* As in his ADA and FCRA claims, Mecca fails to establish that TGH's legitimate non-discriminatory reason for the adverse employment action is pretextual. Therefore, TGH is entitled to summary judgment as to Mecca's interference and retaliation claims under the FMLA.

## *Conclusion*

Mecca's claims of unlawful discrimination based on his disability due to TGH's failure to accommodate and unlawful termination do not survive Defendant's Motion for Summary Judgment.  Mecca has not shown that he was a qualified employee under the ADA.  Further, Mecca has not presented sufficient evidence to show that TGH's legitimate non-discriminatory reasons for his termination are pretextual, that TGH interfered with his ability to exercise his rights under FMLA or retaliated against him for exercising those rights.   Therefore, the Court concludes that TGH's Motion for Summary Judgment should be granted.

It is therefore ORDERED AND ADJUDGED that:

1. Defendant's Motion for Summary Judgment (Dkt. #40) is GRANTED.

2. The Clerk is directed to enter judgment against the Plaintiff Daniel Mecca and in favor of the Defendant Florida Health Services Center, Inc. d/b/a Tampa General Hospital.

3. The Clerk is directed to close this case and deny all pending motions as moot.

**DONE** and **ORDERED** in Tampa, Florida, this 3rd day of February, 2014.

_____
JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel/Parties of Record

S:\Odd\2012\12-cv-2561 msj 40.docx